IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>IRAJ SHAMBAYATI, 1511 ROSEWOOD, L.L.C., AND IDHD PROPERTIES, L.L.C., AS CURRENT OWNER AND SUCCESSOR IN INTEREST TO PROPERTIES PREVIOUSLY OWNED BY IRAJ SHAMBAYATI AND1511 ROSEWOOD, L.L.C.,<br><br>　　　　　Defendants. | CASE NO.:  4:23-cv-221<br><br><br>**CONSENT ORDER** |

## I.    INTRODUCTION

1.    This action was filed by Plaintiff United States of America ("United States") on August 8, 2023, to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3631 ("FHA"). The United States' Complaint alleges that Defendant Iraj Shambayati ("Shambayati"), acting as the agent of Defendants 1511 Rosewood, L.L.C. and IDHD Properties, L.L.C. (together, "Defendants"), violated the FHA by discriminating against female tenants on the basis of sex in the rental of dwellings in and around the City of Savannah, Georgia.

2.    Specifically, the United States alleges that, since at least 2008, Shambayati served as the property manager for approximately 70 or more single-family, duplex, and condominium rental properties in the City of Savannah and surrounding areas in Chatham County. During this period, these rental properties were owned and/or co-owned by one or more of the Defendants.

3.      The United States alleges that from at least 2008, Shambayati has engaged in severe, pervasive, and unwelcome sexual harassment of and retaliation against actual and prospective female tenants. Shambayati's alleged conduct has included, but is not limited to:

a.   Demanding that female tenants engage in, or pressuring them to engage in sexual acts with him to obtain or keep rental housing;

b.   Offering to grant tangible housing benefits, such as waiving, reducing or excusing rent payments, late payments, or deposit amounts; implementing rental payment plans; or providing repairs and maintenance, to female tenants in exchange for sexual acts;

c.   Subjecting female tenants to unwelcome sexual contact, including touching their breasts and buttocks and kissing them;

d.   Making intrusive, unannounced visits to female tenants' homes without their permission for no apparent legitimate purposes and to further his sexual advances;

e.   Making unwelcome sexual comments, propositions, and sexual advances to female tenants; and

f.   Taking adverse housing actions, such as evicting, refusing to make or delaying repairs, serving dispossessory notices or initiating dispossessory actions or threatening to take such actions, against female tenants who have rejected his unwelcome sexual advances and/or refused to engage in sexual acts with him.

4.      The United States alleges that the other Defendants are vicariously liable for Shambayati's discriminatory conduct or, in the case of IDHD Properties L.L.C., is liable as a successor in interest to Defendants Shambayati and 1511 Rosewood, L.L.C.

5.      The United States alleges that, by the conduct described above, Defendants have:

   a.   Refused to rent or negotiate for the rental of, or otherwise made unavailable or denied dwellings[1] because of sex, in violation of 42 U.S.C. § 3604(a);

   b.   Discriminated in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

   c.   Made statements with respect to the rental of dwellings that indicate a preference, a limitation, or discrimination based on sex, in violation 42 U.S.C. § 3604(c); and

   d.   Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by the FHA, in violation of 42 U.S.C. § 3617.

6.      The United States alleges that the conduct described above constitutes a pattern or practice of resistance to the full enjoyment of rights granted by the FHA and a denial to a group of persons rights granted by the FHA that raises an issue of general public importance. 42 U.S.C. § 3614(a).

7.      Defendants deny the allegations of the United States, and specifically deny that the conduct of any Defendant constitutes sexual harassment, discrimination, retaliation, or a violation of the FHA. The Consent Order is entered into as a compromise of a disputed claim and is not an admission of liability by any Defendant.

8.      The United States and Defendants (collectively, the "Parties") agree that this Court has jurisdiction over the subject matter of this case under 28 U.S.C. §§ 1331 and 1345, and 42

---

[1] The term "dwelling" has the meaning set out in the FHA, 42 U.S.C. § 3602(b).

U.S.C. § 3614(a). The Parties have agreed that the claims against Defendants should be resolved without further litigation. Therefore, the Parties consent to the entry of this Consent Order.

**ACCORDINGLY, it is ORDERED**:

## II.   INJUNCTION PROHIBITING SEX DISCRIMINATION WITH RESPECT TO RENTAL OF DWELLINGS

9.     Defendants, all co-owners of the Subject Properties, and Defendants' officers, agents, employees, transferees, successors, heirs and assigns, and all other persons or entities in active concert or participation with them are, with respect to the Subject Properties,[2] enjoined from:

a.   Demanding that female tenants engage in, or pressuring them to engage in, sexual acts to obtain or keep rental housing;

b.   Offering to grant tangible housing benefits, such as waiving, reducing or excusing rent payments, late payments, or deposit amounts; implementing rental payment plans; or providing repairs and maintenance, to female tenants in exchange for sexual acts;

c.   Subjecting female tenants to unwelcome sexual contact;

d.   Making unwelcome sexual comments, propositions, and sexual advances to female tenants; and

e.   Taking adverse housing actions, such as evicting, refusing to make or delaying repairs, serving dispossessory notices or initiating dispossessory

---

[2]   "Subject Property" or "Subject Properties" mean any residential rental property Defendants own or manage, or come to own or manage, in full or in part. Defendants have provided a complete list of the residential rental properties they currently own or control, in full or in part, which is incorporated by reference herein and attached to this Order as Attachment A.

actions or threatening to take such actions, against female tenants who have rejected unwelcome sexual advances and/or refused to engage in sexual acts.

## III.   PROHIBITION AGAINST CONTACT WITH TENANTS, AGGRIEVED PERSONS AND THEIR FAMILY MEMBERS, AND WITNESSES

10.     Defendants are enjoined from purposefully or knowingly engaging in contact or communications, either directly or indirectly, with: (1) any individual the United States has identified as harmed by Defendants' conduct in its initial disclosures and any supplements thereto; (2) any individual whom Defendants know or believe to be a family member of any of the individuals the United States has identified as harmed by Defendants' actions in its initial disclosures and any supplements thereto; (3) any person the United States has identified as a corroborating witness in its initial disclosures and any supplements thereto. Defendants are also enjoined from purposefully or knowingly engaging in contact or communications either directly or indirectly with any current or former tenant, unless the tenant is identified on Defendants' "List of Permissible Contacts" (LPC). Defendants will submit the proposed LPC to the United States within fifteen (15) days of the effective date of this Consent Order. Defendants' LPC will provide the United States with a written explanation describing the nature of the relationship between Defendants and each individual listed in the LPC. "Contact or communications" includes, but is not limited to, physical contact, verbal contact, telephone calls, e-mails, faxes, written communications, text or instant messages, contacts through social media, or other communications made directly or through third parties.

11.     In the event that any Defendant inadvertently or unintentionally has any contact with any individual within the categories identified above, that Defendant will immediately discontinue the contact or communication and take all reasonable steps to avoid any further contact

or communication.

## IV.    PROHIBITION AGAINST PROPERTY MANAGEMENT AND PRESENCE AT SUBJECT PROPERTIES

12.    Defendants are enjoined from directly or indirectly performing any "Property Management Responsibilities" as defined herein at any Subject Property or any other residential rental property. "Property Management Responsibilities" include the following: performing or supervising repairs or maintenance; advertising dwelling units for rent; showing or renting dwelling units; processing rental applications; negotiating rents and security deposits; determining tenant eligibility for subsidies or waivers of fees and rents; inspecting dwelling units; collecting rent and fees; overseeing any aspects of the rental process; or engaging in any other property-related activities that involve, or may involve, personal contact with tenants or prospective tenants.

13.    Shambayati is permanently enjoined from entering any part of any of the Subject Properties. This prohibition includes entry into any occupied or unoccupied dwelling unit.[3] In the event Shambayati wishes to enter any unoccupied dwelling unit for purposes of selling the property, Shambayati shall provide the United States with written notice of the proposed entry at least five days in advance. If the United States consents in writing to the proposed entry, Shambayati may enter the Subject Property without violating this paragraph.

## V.    SELECTION OF INDEPENDENT MANAGER

14.    Defendants will enter into an agreement with an individual, individuals, or entity (the "Independent Manager") to manage all aspects of the rental and management of each Subject

---

[3]  "Dwelling unit" includes all portions of the home such as the basement, yard, parking area storage unit and garage.

Property, including any residential rental property that Defendants subsequently acquire. The Independent Manager alone will have the responsibility and authority for all Property Management Responsibilities and any other management activities.

15.     The Independent Manager must have at least three (3) years' full-time experience in managing residential rental properties and must have no current or past employment, financial, personal, or familial relationship with Defendants, Defendants' family members or business associates, or any current or former co-owner of any Subject Property. The Independent Manager must have experience and training[4] in managing tenants who use Housing Choice Voucher Program (Section 8) vouchers and/or other forms of rental assistance. The Independent Manager must be approved by the United States, per the process outlined in the paragraph below.

16.     Within fifteen (15) days after the date of entry of this Consent Order ("effective date of this Consent Order"), Defendants will identify a proposed Independent Manager and provide counsel for the United States with relevant information about the proposed Independent Manager's professional background as well as contact information. Defendants have a previously existing contract with a third-party management company, *see* Doc. No. 22 at 2-3, that expires on September 1, 2024. The third-party management company will assume all responsibility and authority for all Property Management Responsibilities and any other management activities until September 1, 2024, after which the United States must approve the use of the proposed Independent Manager. If the United States does not approve the proposed Independent Manager, Defendants will have fifteen (15) days from such notification to identify an alternate Independent Manager. This process will continue until an Independent Manager is approved by the United

---

[4]  If the manager does not have specific training in this regard, then the manager must (1) agree to receive training on this topic, and (2) submit proof of the training as part of the approval process set forth in Paragraph 16, *supra.*

States. Defendants will then hire the approved Independent Manager within ten (10) days. If the Parties cannot reach agreement on an Independent Manager after a good faith effort, any party may seek the Court's assistance, consistent with Paragraph 58.

17.     Defendants may change the Independent Manager, provided that any subsequent Independent Manager is approved in advance by the United States, per the process outlined in the preceding paragraph.

18.     On or before October 16, 2024, the Parties will file a joint report with the Court confirming that Defendants have engaged an Independent Manager approved by the United States, or otherwise reporting on the status of Defendants' efforts related to the identification and hiring of an Independent Manager.

## VI.     NONDISCRIMINATION POLICY AND COMPLAINT PROCEDURE

19.     Within twenty (20) days of the United States' approval of Defendants' selection of an Independent Manager, Defendants will provide to the United States a proposed Nondiscrimination Policy and Complaint Procedure. The Nondiscrimination Policy and Complaint Procedure will explain the FHA, including its prohibitions on sexual harassment and other sex-based discrimination in rental housing, and will state that the FHA prohibits retaliation against a tenant for, among other reasons, submitting a complaint under the Nondiscrimination Policy and Complaint procedure. If the United States does not approve the proposed Nondiscrimination Policy and Complaint Procedure, Defendants will have fifteen (15) days from such notification to submit a revised proposed Nondiscrimination Policy and Complaint Procedure. This process will continue until a Nondiscrimination Policy and Complaint Procedure is approved by the United States. If the Parties cannot reach agreement on a Nondiscrimination Policy and Complaint Procedure after a

good faith effort, any party may seek the Court's assistance, consistent with Paragraph 58.

20.     Defendants may change the Nondiscrimination Policy and Complaint Procedure, provided that any change is approved by the United States prior to implementation, consistent with the process outlined in the preceding paragraph.

## VII.    EDUCATION AND TRAINING

21.     Within thirty (30) days of the United States' approval of Defendants' selection of an Independent Manager, Defendants, co-owners of the Subject Properties, the Independent Manager, and any person involved in performing Property Management Responsibilities at any of the Subject Properties will undergo live training on the FHA. Live training may include training provided by streaming or video service (*e.g.*, Zoom). At a minimum, the training will consist of instruction on the requirements of the FHA, with an emphasis on sexual harassment and other types of discrimination because of sex, which includes discrimination based on sexual orientation and gender identity, and a question-and-answer session for the purpose of reviewing this topic. The attendees will be provided a copy of this Consent Order before or at the training. The training will be conducted by a qualified third party, independent of Defendants or their counsel, approved in advance by the United States. Any expenses associated with this training will be borne by Defendants. Defendants, through the Independent Manager, may record this training to be used for new employees.

22.     Defendants, through the Independent Manager, will obtain certifications of attendance, executed by each individual who received training, confirming their attendance. This certification, included at Attachment B, will include the name of the instructor, the date the course was taken, and the length of the course and/or time within which the course was completed. Copies

of the certification will be provided to counsel for the United States.

23.     Any new Independent Managers and any new employees or agents working with or for the Independent Manager who are involved in Property Management Responsibilities at the Subject Properties will, within thirty (30) days of the commencement of their employment or agency relationship with Defendants or the Independent Manager, be required to view a recording of the training described in Paragraph 21. Defendants, through the Independent Manager, will send a copy of the certifications of any training conducted under this Paragraph to counsel for the United States consistent with Paragraph 22.

## VIII.   ADDITIONAL PROPERTY MANAGEMENT RESPONSIBILITIES

24.     Defendants, through the Independent Manager, will post an "Equal Housing Opportunity" sign in each office or location in which rental activity is conducted involving the Subject Properties. The sign will indicate that all dwellings are available for rent on a nondiscriminatory basis. An 11-inch by 14-inch poster that comports with 24 C.F.R. Part 110 will satisfy this requirement. Such poster will be placed in a prominent, well-lit location where it is easily readable. Defendants may use Department of Housing and Urban Development ("HUD") Form 928, available in English at:

https://portal.hud.gov/hudportal/documents/huddoc?id=928.1.pdf.

25.     Defendants, through the Independent Manager, will require that any advertising, including online, print, radio, television or other media, signs, pamphlets, brochures and other promotional literature is in compliance with HUD advertising guidelines, available on the HUD website at:

https://www.hud.gov/sites/dfiles/FHEO/documents/BBE%20Part%20109%20Fair%20Ho

using%20Advertising.pdf.

26.    Defendants, through the Independent Manager, will implement the Nondiscrimination Policy and Complaint Procedure described in Section VI of this Consent Order and ensure that it is followed, by:

a.    Distributing the Nondiscrimination Policy and Complaint Procedure to all employees or agents involved in performing Property Management Responsibilities at any of the Subject Properties within five (5) days of the United States' approval of the Nondiscrimination Policy and Complaint Procedure or within ten (10) days of the commencement of their employment or agency relationship;

b.    Securing a signed statement from each such employee or agent acknowledging that the employee or agent has received and read the Nondiscrimination Policy and Complaint Procedure, has had the opportunity to have questions about the Nondiscrimination Policy and Complaint Procedure answered, and agrees to abide by the relevant provisions of the Nondiscrimination Policy and Complaint Procedure. This Employee Acknowledgement Statement will be in the form of Attachment C;

c.    Providing any new employees or agents engaged in Property Management Responsibilities at the Subject Properties with a copy of the Nondiscrimination Policy and Complaint Procedure, within ten (10) days of the commencement of their employment or agency relationship. The Independent Manager will secure from each new employee or agent a signed Employee Acknowledgement Statement in the form of Attachment C;

d.    Distributing the Nondiscrimination Policy and Complaint Procedure to

every tenant of each Subject Property within fifteen (15) days of the United States'

approval of the Nondiscrimination Policy and Complaint Procedure and ensuring

that a copy of the Nondiscrimination Policy and Complaint Procedure is attached

to the lease of every new tenant at every Subject Property.

27. Defendants, through the Independent Manager, will notify the United States in the

event the Independent Manager obtains any information indicating or suggesting that Defendants

are in violation of any provision of this Consent Order or the FHA. Such notification will be

provided to the United States in writing within five (5) days of the Independent Manager learning

such information.[5]

28. Defendants, through the Independent Manager, will provide to the United States

notification and documentation of any written or oral complaint against any Defendant, any co-

owner of a Subject Property, or any of Defendants' agents or employees, regarding alleged

discrimination in housing within fifteen (15) days of receipt of the complaint. The notification will

include the full details of the complaint, including the complainant's name, address, and telephone

number; the details of the complaint; and a copy of the complaint itself, if the complaint was made

in writing. Defendants will promptly provide the United States all information it may request

concerning any such complaint and will inform the United States within fifteen (15) days of the

substance of any resolution of such complaint.

29. Defendants, through the Independent Manager, will provide any information

reasonably related to compliance with this Consent Order that is requested by the United States.

---

[5] All documents or other communications required by this Consent Order to be sent to the United States will be sent by email to Elise.Shore@usdoj.gov, Melissa.Carrington2@usdoj.gov, and Bradford.Patrick@usdoj.gov, and by Federal Express overnight delivery to: Elise Shore, Attn: DJ 175-20-125, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 150 M Street NE, 8th Floor, Washington, D.C. 20002, or as otherwise directed by the United States.

## IX.    REPORTING AND RECORD KEEPING

30.    Within ninety (90) days of the date of entry of this Consent Order, and every 12 (12) months thereafter for the term of this Consent Order, Defendants will ensure that the Independent Manager delivers to the United States a report containing information about Defendants' compliance with the terms of this Consent Order during the preceding reporting period, including but not limited to:

a.    A list of the Subject Properties, including the street address, the number of rental units at each property, and a description of Defendants' interest in the property;

b.    A list of all co-owners of and tenants at the Subject Properties and the tenants' telephone numbers;

c.    Written confirmation by the Independent Manager that the Independent Manager performs, and has performed during the reporting period, all Property Management Responsibilities at the Subject Properties, as set forth in Paragraph 12 of this Consent Order;

d.    Written confirmation by the Independent Manager that, to the Independent Manager's knowledge, Defendants (a) have not performed any Property Management Responsibilities, and (b) Shambayati has not entered any part of any of the Subject Properties, except as permitted above;

e.    Photographs of each office or location in which rental activity is conducted showing the "Equal Housing Opportunity" signs required by Paragraph 24 of this Consent Order;

f.    Copies of all fair housing training certifications, in accordance with

Paragraphs 22 and 23 of this Consent Order;

g.      Confirmation that the Nondiscrimination Policy and Complaint Procedure have been implemented and are in effect;

h.      Copies of all signed Employee Acknowledgement Statements, in accordance with Paragraphs 26(b) and (c) of this Consent Order; and

i.      Confirmation that the Nondiscrimination Policy and Complaint Procedure have been distributed to every tenant of each Subject Property, and subsequently that they have been attached to the lease of every new tenant at every Subject Property, in accordance with Paragraph 26(d) of the Consent Order.

The final report due under this Paragraph will be delivered to the United States sixty (60) days prior to the expiration of this Consent Order.

31.      Defendants will ensure that the Independent Manager preserve all records that are the source of, contain, or relate to any of the information pertinent to Defendants' obligations under this Consent Order. Upon reasonable notice to counsel for Defendants, or to Defendants if they become unrepresented by counsel, representatives of the United States will be permitted to inspect and copy all such records at any and all reasonable times or, upon request by the United States, Defendants will provide or ensure that the Independent Manager provides copies of such documents.

## X.      MONETARY DAMAGES AND OTHER RELIEF FOR AGGRIEVED PERSONS

32.      Defendants shall establish an interest-bearing escrow account and deposit the total sum of five hundred ninety thousand dollars ($590,000) for the purpose of compensating the aggrieved persons identified by the United States (hereinafter "aggrieved persons"). This money

shall be referred to as the "Settlement Fund." The timing of the funding of this sum is set forth in Paragraphs 33-34.

33.     Within 15 days of the effective date of this Order, Defendants shall deposit three hundred thousand dollars ($300,000) into the Settlement Fund. Within seven (7) days of this deposit, Defendants shall submit proof to the United States that the account described in Paragraph 32 has been established and the funds have been deposited in it.

34.     Within 90 days of the effective date of this Order Defendants shall deposit the remaining two hundred ninety thousand dollars ($290,000) into the Settlement Fund. Within seven (7) days of this deposit, Defendants shall submit proof to the United States that the funds have been deposited in the account described in Paragraph 32.

35.     Any interest accruing to the Settlement Fund shall become a part of the Settlement Fund and be utilized as set forth herein.

36.     Defendants shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited pursuant to Paragraphs 33 and 34.

37.     If not previously provided, Defendants will produce any rental/tenancy records, or any other records in the possession, custody, or control of Defendants, that the United States believes to be useful in identifying persons who may be entitled to relief under this Consent Order. Upon reasonable notice, Defendants will provide such rental/tenancy records or will permit representatives of the United States to make copies of such rental/tenancy records.

38.     Nothing in this Consent Order will preclude the United States from making its own efforts to locate and provide notice to persons who may be entitled to relief under this Consent Order.

39.     Potential aggrieved persons will have one hundred eighty (180) days from the entry

of this Consent Order to contact the United States. The United States will investigate the claims of potential aggrieved persons. The United States will collect sworn statements from the individuals it determines to be aggrieved.

40. The United States shall inform Defendants in writing of its determinations as to which persons are aggrieved and an appropriate amount of damages (plus accrued interest) that should be paid to each. Defendants hereby waive the right to dispute the United States' determination in this or any other proceeding.

41. Defendants shall, within fifteen (15) days of the receipt of the United States' determinations, deliver to counsel for the United States[6] a separate check payable to each aggrieved person for the designated amount.

42. In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund plus accrued interest.

43. When the United States has received a check from Defendants payable to an aggrieved person and a signed release in the form of Attachment D from the aggrieved person, counsel for the United States shall deliver the check to the aggrieved person and the original, signed release to counsel for Defendants. No aggrieved person shall be paid until they have executed and delivered to the United States the release at Attachment D.

44. The compensation required to be paid under this this Section is a debt within the meaning of 11 U.S.C. § 523(a)(6). Accordingly, Defendants shall not seek to discharge any part of this debt in bankruptcy.

45. In the event that any of the checks sent to the United States is not cashed, deposited,

---

[6] Checks shall be delivered to by Federal Express overnight delivery to: Elise Shore, Attn: DJ 175-20-125, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 150 M Street NE, 8th Floor, Washington, D.C. 20002.

or otherwise negotiated within six (6) months of the date the check was issued, Defendants agree to (a) notify the United States and, upon direction of the United States, (b) cancel any such check, and (c) issue one or more new checks as directed by the United States. Defendants agree that any new check will be issued either in the name of the individual who failed to deposit the cancelled check, or to other aggrieved persons, or to the United States Treasury, as directed by the United States.

**XI.     ADDITIONAL RELIEF FOR AGGRIEVED PERSONS**

46.     Within twenty (20) days of a request by the United States, Defendants will:

a.     Execute the statement attached as Exhibit E to be filed in connection with any dispossessory/eviction-related proceedings and related judgments filed or entered against any aggrieved persons identified by the United States;

b.     Deliver a written request to each of the three major credit bureaus[7] and any other databases, including tenant screening services, to which Defendants or their agents have reported information regarding any of the aggrieved persons identified by the United States, asking to remove any negative entries regarding the aggrieved persons resulting from Defendants' reports. Defendants shall promptly provide copies of all such written requests to the United States; and

c.     Provide a letter on the letterhead of the Independent Manager (addressed "To Whom It May Concern") to Counsel for the United States for any aggrieved person identified by the United States, in the form of Attachment F.

47.     Defendants, through the Independent Manager, will provide a neutral  reference in

---

[7] Those bureaus are Equifax, Experian, and TransUnion.

response to any rental reference requests regarding any aggrieved person identified by the United States. The reference will state the timeframe during which the aggrieved person resided at Defendants' property and identify the address of the property. The reference will state the timeframe during which the aggrieved person resided at Defendants' property and identify the address of the property. Defendants will provide no further information in response to a reference request.

## XII.   CIVIL PENALTY

48.     Within thirty (30) days of the effective date of this Order, Defendants will pay ten thousand dollars ($10,000) to the United States Treasury as a civil penalty under 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The payment will be in the form of an electronic funds transfer in accordance with written instructions to be provided by the United States.

49.     The civil penalty referenced in Paragraph 48 is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7) and is not compensation for actual pecuniary loss. Defendants shall not seek to discharge any part of this debt in bankruptcy.

50.     In the event that Defendants, their agents, or employees engage in any future violation of the FHA, such violation(s) shall constitute a "subsequent violation" under 42 U.S.C. § 3614(d)(1)(C)(ii) and shall be subject to further penalties. This provision applies to any future violation, whether resolved voluntarily or through judicial proceedings.

## XIII.   ACQUISITION OR TRANSFER OF INTEREST IN RESIDENTIAL RENTAL PROPERTIES

51.     If Defendants acquire a direct or indirect management, ownership, financial, or

controlling interest in any other residential rental property during the term of this Order, such property will be subject to the applicable provisions of this Order as a Subject Property. Defendants must provide written notification to the United States within fifteen (15) days of acquiring such an interest. Defendants will further provide the United States with copies of any documents memorializing the transfer in interest of the property.

52.     If any Defendant sells or transfers any property listed in Attachment A, including any property co-owned, or any property acquired under Paragraph 51, to a bona fide, independent third-party purchaser in an arms-length transaction, that property will cease to be subject to this Order as a Subject Property. For purposes of this Order, a "bona fide, independent third-party purchaser" is one with whom Defendants have no current or past financial, contractual, personal, or familial relationship. an "arms-length transaction" is one that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that transaction. Defendants will inform the United States within fifteen (15) days of any such transaction and provide documentation sufficient to confirm the sale or transfer, including contact information for the subsequent purchaser.

53.     Defendants will remain liable for their obligations under this Consent Order, regardless of any property sale or transfer.

54.     If any property is sold or transferred in a non-arms-length transaction, or to a non-third-party purchaser, that property will remain a Subject Property under this Consent Order, and Defendants will continue to be responsible for compliance with the provisions of this Consent Order and will remain liable for any violations of this Consent Order for its duration.

## XIV.   DURATION, MODIFICATION, AND ENFORCEMENT

55.     This Consent Order is effective immediately upon its entry by the Court. For purposes of this Order, the phrases "effective date" and "date of this Consent Order" will refer to the date on which the Court enters this Consent Order.

56.     Unless otherwise specified or extended under Paragraph 57, the provisions of this Consent Order will be in effect for a period of five (5) years from the date of this Consent Order. The Court will retain jurisdiction during this period for the purpose of enforcing or interpreting the provisions of this Consent Order, after which time the case will be dismissed with prejudice.

57.     Without further order of the Court, the Parties may mutually agree, in writing, to reasonable extensions of time to carry out any provisions of the Consent Order. In addition, the United States may move the Court to extend the terms of this Consent Order in the event of noncompliance with any of its terms, or if the interests of justice so require.

58.     The Parties will endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution. However, in the event the United States contends that there has been a failure by the Defendants, whether willful or otherwise, to perform in a timely manner any act required by this Order, or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance or non-performance of certain acts, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

## XV.   MISCELLANEOUS

59.    The Parties agree that as of the effective date of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described in the United States' Complaint. To the extent that any of the Parties previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described in the Complaint, they are no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any of the Parties of any other obligations imposed by this Consent Order.

60.    Except as otherwise provided in Paragraph 58, above, the Parties will bear their own costs and attorneys' fees associated with this litigation.

**SO ORDERED**, this 29th day of April, 2024.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

Dated: 7/22/2024

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

JILL E. STEINBERG
United States Attorney
Southern District of Georgia

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief

MICHAEL S. MAURER
Deputy Chief

s/ _____

BRADFORD C. PATRICK
Assistant U.S. Attorney
Southern District of Georgia
South Carolina Bar No. 102092
P.O. Box 8970
Savannah, GA 31412
Phone: (912) 652-4422
Fax: (912) 652-4427
Bradford.patrick@usdoj.gov

s/ _____

ELISE SANDRA SHORE
Georgia Bar No. 557131
MELISSA A. CARRINGTON
Iowa Bar No. 13033
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
150 M. St., NE
4CON, Room 8.127
Washington, DC 20530
Phone: (202) 305-0070
Fax: (202) 514-1116
E-mail: Elise.Shore@usdoj.gov
E-mail: Melissa.Carrington2@usdoj.gov

FOR DEFENDANTS IRAJ SHAMBAYATI, 1511 ROSEWOOD, L.L.C., AND IDHD
PROPERTIES, L.L.C., AS CURRENT OWNER AND SUCCESSOR IN INTEREST TO
PROPERTIES PREVIOUSLY OWNED BY IRAJ SHAMBAYATI AND 1511 ROSEWOOD,
L.L.C.:

_James D. Durham_ (By express permission – PJS)
James D. Durham
Griffin Durham Tanner & Clarkson, LLC
104 W. State Street, Suite 200
Savannah, Georgia 31401
jdurham@griffindurham.com


_Patrick Schwedler_
Patrick J. Schwedler
Griffin Durham Tanner & Clarkson, LLC
104 W. State Street, Suite 200
Savannah, Georgia 31401
pschwedler@griffindurham.com

**Attachment A**
<u>List of Subject Properties</u>

| Address |
| --- |
| 1510 Adrian Ct., Savannah, GA 31406 |
| 2302 Alaksa St, Savannah, GA 31404 |
| 301 Bay St. W., Savannah, GA 31410 |
| 54 Berwick Dr. N., Savannah, GA 31410 |
| 2307 Brevard Cir, Savannah, GA 31404 |
| 1013 Bryan Woods Loop, Savannah, GA 31410 |
| 26 Chatham St., Savannah, GA 31406 |
| 102 Countryside Ct., Savannah, GA 31406 |
| 205 Croatan St., Savannah, GA 31406 |
| 217 Croatan St., Savannah, GA 31406 |
| 2 Cromwell Pl., Savannah, GA 31410 |
| 8 Cromwell Pl., Savannah, GA 31410 |
| 9 Cromwell Pl., Savannah, GA 31410 |
| 13 Cromwell Pl., Savannah, GA 31410 |
| 14 Cromwell Pl., Savannah, GA 31410 |
| 10 Delmar Cir., Savannah, GA 31419 |
| 1922 E 59th St., Savannah, GA 31404 |
| 2001 E 59th St., Savannah, GA 31404 |
| 3125 Helen St., Savannah, GA 31404 |
| 7412 Johnny Mercer Blvd., Savannah, GA 31410 |
| 7716 Johnny Mercer Blvd., Savannah, GA 31410 |

| |
|---|
| 17 Kandlewood St., Savannah, GA 31406 |
| 19 Kandlewood St., Savannah, GA 31406 |
| 31 Kandlewood Dr., Savannah, GA 31406 |
| 81 Knollwood Ln., Savannah, GA 31419 |
| 85 Knollwood Ln., Savannah, GA 31419 |
| 9302 Leach Dr., Savannah, GA 31406 |
| 9617 Lehigh Ave., Savannah, GA 31406 |
| 100 Oyster Shell Rd., Unit A-8, Savannah, GA 31410 |
| 100 Oyster Shell Rd., Unit A-11, Savannah, GA 31410 |
| 102 Oyster Shell Rd., Unit C-9, Savannah, GA 31410 |
| 1511 Rosewood Dr., Savannah, GA 31410 |
| 103 Shoals Dr.., Unit K-9, Savannah, GA 31410 |
| 104 Shoals Dr., Unit L-3, Savannah, GA 31410 |
| 104 Shoals Dr., Unit L-5, Savannah, GA 31410 |
| 104 Shoals Dr., Unit L-7, Savannah, GA 31410 |
| 105 Shoals Dr., Unit J-3, Savannah, GA 31410 |
| 105 Shoals Dr., Unit J-9, Savannah, GA 31410 |
| 102 Tabby Ln., Unit F-8, Savannah, GA 31410 |
| 103 Tabby Ln., Unit G-5, Savannah, GA 31410 |
| 310 Tibet Ave., Unit 46, Savannah, GA 31406 |
| 130 Tibet Ave., Unit 102, Savannah, GA 31406 |
| 130 Tibet Ave., Unit 103, Savannah, GA 31406 |
| 130 Tibet Ave., Unit 104, Savannah, GA 31406 |
| 130 Tibet Ave., Unit 105, Savannah, GA 31406 |

| |
|---|
| 130 Tibet Ave., Unit 106, Savannah, GA 31406 |
| 130 Tibet Ave., Unit 107, Savannah, GA 31406 |
| 130 Tibet Ave., Unit 108, Savannah, GA 31406 |
| 12510 White Bluff Rd, Unit 1004, Savannah, GA 31406 |
| 330 Woodley Rd., Savannah, GA 31419 |

**Attachment B**
<u>Employee/Agent Training Acknowledgment</u>

I hereby acknowledge that on _____, I completed training

conducted by _____ on the requirements of the federal Fair

Housing Act and the Consent Order entered by the United States District Court for the Southern

District of Georgia in *United States v. Shambayati et al.,* CV4:23-221 (S.D. Ga.). I have also

received and read a copy of that Consent Order. My attendance at the training occurred during

the following time frame: [insert starting and ending times].

I understand my obligation to not discriminate against any person in any aspect of the

rental of a residential dwelling because of sex, race, color, religion, national origin, disability, or

familial status (which includes having children under age 18).

I also understand my obligation not to retaliate against any individual for exercising a

right protected by the Fair Housing Act.

Signature

_____
Print Name

_____
Job Title/Position

_____
Date

**Attachment C**
<u>Employee Acknowledgement Form</u>

I affirm that I, _____, received a copy of and read the
Nondiscrimination Policy and Complaint Procedure adopted for residential rental properties
owned, co-owned, or managed by Iraj Shambayati, 1511 Rosewood, L.L.C., and IDHD
Properties, L.L.C. I further affirm that I have had the opportunity to ask questions about the
Nondiscrimination Policy and Complaint Procedure, and agree that any questions have been
answered to my satisfaction. I agree to abide by the Nondiscrimination Policy and Complaint
Procedure.


Signature

_____
Print Name

_____
Job Title/Position

_____
Date

**Attachment D**

<u>Release of Claims</u>

In consideration for the Parties' agreement to the terms of the Consent Order they entered into in the case of *United States v. Shambayati et al.,* CV4:23-221 (S.D. Ga.), as approved by the United States District Court for the Southern District of Georgia, and in consideration for the payment of $_____, I, _____, do hereby fully release and forever discharge Iraj Shambayati, 1511 Rosewood, L.L.C., and IDHD Properties, L.L.C. (together, "Defendants") from any and all fair housing sexual discrimination claims based on the facts set forth in the Complaint in the action named above that I may have had against Defendants as of the entry of the Consent Order.  I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

Executed this _____ day of _____, 20__.


_____
Signature

_____
Print Name

**Attachment E**
Form of Stipulation

## IN THE MAGISTRATE COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| Plaintiff(s)/Landlord, | ) | |
| | ) | |
| vs | ) | Civil Action No.: |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s)/Tenant | ) | |

## STIPULATION

WHEREAS the parties settled their dispute that relates to this action; and

WHEREAS Defendant seeks the opportunity to find new housing and the record of this eviction case is making that difficult for her;

NOW THEREFORE the parties by their undersigned counsel stipulate and agree this matter may be expunged from the public record pursuant to the Court's inherent authority without further notice or hearing. The parties agree the public has no interest in knowing about the factual record of this case.

IT IS SO AGREED.

DATED:_____

[insert both parties' signature lines]

**Attachment F**
Letter to Credit Bureau

To Whom it May Concern:


_____ was formerly a tenant at a residential property that I owned. I am requesting you disregard any negative credit information that may have previously been submitted in connection with her tenancy at my unit. _____ should not have a negative credit history associated with this tenancy.

Regards,


_____